# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 25, 2010

Charles R. Fulbruge III
Clerk

No. 08-60941
Consol w/ No. 09-60188

JERRY YOUNG; CHRISTY COLLEY,

> Plaintiffs–Appellants

v.

DELBERT HOSEMANN, in his official capacity as the Secretary of State of Mississippi; KRISTIN BUSE, in official capacity as Election Commissioner of Lee County; DEBBY MCCAFFERTY, in official capacity as Election Commissioner of Lee County; HARRY GRAYSON, JR., in official capacity as Election Commissioner of Lee County; VIVIAN BURKLEY, in official capacity as Election Commissioner in Panola County; JULIUS HARRIS, in official capacity as Election Commissioner in Panola County; JIMMY HERRON, in official capacity as Election Commissioner in Panola County; BONNIE G. LAND, in official capacity as Election Commissioner in Panola County; RONALD MCMINN, in official capacity as Election Commissioner in Panola County; JOHN H. EDWARDS, in official capacity as Election Commissioner of Lee County; JOHN M. WAGES, in official capacity as Election Commissioner of Lee County,

> Defendants–Appellees

Appeals from the United States District Court
for the Southern District of Mississippi

Before JONES, Chief Judge, and SMITH and ELROD, Circuit Judges.

EDITH H. JONES, Chief Judge:

No. 08-60941
Consol w/ No. 09-60188

Jerry Young and Christy Colley, both convicted felons, contend that § 241 of the Constitution of the State of Mississippi grants felons the right to vote in presidential elections. That the state denies them this right, they claim, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the National Voter Registration Act. The plain text of § 241, however, belies Young and Colley's proffered interpretation of the provision. We therefore affirm the district court's dismissal of their case.

## I. BACKGROUND

Section 241 of the Constitution of the State of Mississippi provides as follows:

> Qualification for Electors. Every inhabitant of this state, except idiots and insane persons, who is a citizen of the United States of America, eighteen (18) years old and upward, who has been a resident of this state for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector, except that he shall be qualified to vote for President and Vice President of the United States if he meets the requirements established by Congress therefor and is otherwise a qualified elector.

Appellants Jerry Young and Christy Colley are felons. They otherwise meet Mississippi's requirements to vote. In 2008, they sought to register to vote in that year's presidential election, but were told that, as felons whose voting rights had not been restored by pardon or legislative enactment, they were ineligible to do so.

On September 12, 2008, Young and Colley filed this lawsuit against the Mississippi Secretary of State and the election commissioners of their counties

No. 08-60941
Consol w/ No. 09-60188

("election officials"), seeking a preliminary injunction to allow them to register and to vote. The final clause of § 241 ("except that . . . qualified elector"), they argued, is an exception to the bar on felon voting that precedes it and therefore guarantees them the right to vote. Under this interpretation, the state's actions violated state law, the Equal Protection Clause of the Fourteenth Amendment, and the National Voter Registration Act.

The district court denied the plaintiffs' request for a preliminary injunction from the bench, stating that their interpretation of § 241 was not "fair or reasonable." This court subsequently denied the plaintiffs' motion for emergency injunctive relief pending appeal.

In October, the election officials filed a motion to dismiss the complaint for lack of federal jurisdiction and failure to state a claim. FED. R. CIV. P. 12(b)(1), (6). On March 9, 2009, the district court granted that motion as to 12(b)(6), concluding that, as a matter of law, the plaintiffs' complaint was "without merit and should be dismissed with prejudice" because their interpretation of § 241 was "legally incorrect." The court also concluded that "defendants have correctly construed this provision."

The plaintiffs timely appealed.

## II. STANDARD OF REVIEW

Whether a district court possesses subject matter jurisdiction is, as question of law, reviewed *de novo* on appeal. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). A district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is also subject to *de novo* review. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). The facts pled by the appellants before the district court are uncontested and so not subject to review.

No. 08-60941
Consol w/ No. 09-60188

## III.  DISCUSSION

The appellants raise three issues on appeal.  First, they argue that the district court's order dismissing their complaint failed to set forth a basis for the decision sufficient for review by this court.  Second, they challenge the state's interpretation of § 241.  And third, they propose that, if this court rejects their proffered interpretation of § 241, it abstain under the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), and leave the question of § 241 to Mississippi courts.

### A.  Jurisdiction

First, however, we address the matter of jurisdiction.  The election officials contend that Young's and Colley's federal claims do not establish federal question jurisdiction, 28 U.S.C. § 1331, because they are clearly "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 681 (1946).

When a federal claim appears on the face of the complaint, "[d]ismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision." *Bell v. Health-More*, 549 F.2d 342, 344 (5th Cir. 1977).  Further, when a complaint asserts a cognizable federal claim, dismissal for want of jurisdiction is disfavored as a matter of policy:

> Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.  This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment)—both of which place greater restrictions on the district court's discretion.

No. 08-60941
Consol w/ No. 09-60188

*Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981) (en banc). Therefore, the pleading burden to establish federal question jurisdiction is low: only claims "patently without merit . . . justify the district court's dismissal for want of jurisdiction." *Suthoff v. Yazoo County Indus. Dev. Corp.*, 637 F.2d 337, 340 (5th Cir. 1981).

In their complaint, the appellants alleged that, because § 241 gives felons the right to vote, the election officials' "action of failing and/or refusing to allow Plaintiffs to register and vote for President and Vice President treats them differently from other qualified voters and violates the Equal Protection Clause." Similarly, they alleged that Mississippi's failure to provide a registration form for federal elections is, if state law permits them to vote in such elections, a violation of the National Voter Registration Act's requirement that each state "shall include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license." 42 U.S.C. § 1973gg-3.

The election officials challenge federal question jurisdiction on three grounds. First, they argue that the appellants' federal claims merely restate their state claim. A disputed application of state law, however, can be the basis for a § 1983 claim and thereby support federal question jurisdiction. *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347–348 (5th Cir. 1985). State law is challenged here, but an Equal Protection challenge to state practices that deny a class of voters the right to participate on an equal basis with other qualified voters is a federal claim, as is a challenge to such a practice under the NVRA. That these claims alleging violations of rights conferred by federal law are predicated on an alleged violation of state law is of no moment.

Second, the election officials argue that the substance of the appellants' federal claims is clearly foreclosed by law and therefore frivolous. As to the

5

No. 08-60941
Consol w/ No. 09-60188

Equal Protection claim, the Supreme Court has stated that "the Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population." *Lubin v. Panish*, 415 U.S. 709, 713, 94 S. Ct. 1315, 1318 (1974); *Bush v. Gore*, 531 U.S. 98, 104–105, 121 S. Ct. 525, 530 (2000) ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). Whatever its merit, the appellants' Equal Protection claim, made through § 1983, is not "clearly foreclosed" by law and so is neither insubstantial nor frivolous. For that reason, it is sufficient to support federal question jurisdiction.

The NVRA claim is likewise not clearly foreclosed. A state is not required to register convicted criminals to vote in an election when those criminals are ineligible to vote "as provided by State law." 42 U.S.C. § 1973gg-6(a)(3)(b). If Mississippi's law does not disenfranchise felons, the state may have violated the terms of the NVRA. That this claim is predicated on a dispute of state law does not undermine federal question jurisdiction.

Finally, the election officials argue that, even if the appellants' federal claims are sufficiently cognizable to support federal question jurisdiction, the Eleventh Amendment nonetheless bars them. This argument is premised on *Pennhurst*, in which the Supreme Court explained, "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984). *Pennhurst*, which rejected an injunction entered by a district court that required state officials to conform their conduct to state law, is inapplicable here. The Eleventh Amendment may be relevant to the appellants' state law claim, but it

6

has no relevance to their claims seeking to vindicate federal rights and thereby the supremacy of federal law.

Because the appellants' federal claims are neither frivolous nor clearly foreclosed by law, they support subject matter jurisdiction.

## B.  Sufficiency of the District Court's Decision

The appellants assert that the district court's order granting the election officials' motion to dismiss under Rule 12(b)(6) failed to set forth a sufficient basis for the decision, preventing this court from reviewing the judgment.

In *Sprint/United Mgmt. Co. v. Mendelsohn*, ___ U.S. ___, 128 S. Ct. 1140, 1145 (2008), the Supreme Court vacated a judgment that relied on a district court order that excluded evidence without stating the basis for doing so.  The Tenth Circuit had offered a *post hoc* rationalization for  the district court's ruling. *Id.*  The Supreme Court, however, found no indication supporting either the rationalization or that the district court had evaluated the excluded evidence under FED. R. EVID. 403. *Id.* at 1146.  Accordingly, the Court directed the district court to clarify its evidentiary ruling.  Similarly, in *Castillo v. City of Weslaco*, this court declined to reach the merits of an appeal of a district court's order denying summary judgment because the order "failed to outline the relevant factual scenario and the evidence in the record establishing the relevant conduct." 369 F.3d 504, 507 (5th Cir. 2004).  "[R]ather than combing through the record ourselves and concluding what factual scenario the district court likely assumed," the court remanded for clarification, while acknowledging that it was "not required to make such a remand." *Id.*

These cases are inapposite for two reasons.  First, an appellate court is not compelled to remand when the basis for a district court's decision is readily inferable, even if tersely stated.  Second, these particular cases turned on the district court's unique competence and duty to make determinations concerning

No. 08-60941
Consol w/ No. 09-60188

the relevance, prejudice, and existence of evidence (*e.g.*, at summary judgment), rather than the application of law. Unlike in *Mendelsohn* and *Castillo*, no material facts are at issue in the present case.

The district court's statement of the legal basis for its decision was sufficient. The plaintiffs' interpretation of § 241, it stated, was not "a fair or reasonable construction." It concluded instead "that defendants have correctly construed this conclusion." Accordingly, it dismissed the plaintiffs' claims on that textual ground. The brevity of the district court's order does not impede this court's ability to conduct *de novo* review.

### C. Section 241 of the Mississippi Constitution

Turning to the merits, appellants contend that Section 241, which sets out voter qualifications, contains an explicit exception that allows felons to vote in presidential elections. The state's longstanding interpretation to the contrary is that the bar on felon voting applies equally in all elections.

The parties dispute the meaning of the provision's "presidential election clause":

> . . . except that he shall be qualified to vote for President and Vice President of the United States if he meets the requirements established by Congress therefor and is otherwise a qualified elector.

Appellants—represented by the ACLU—concede that Mississippi could constitutionally, and consistently with the federal Voting Rights Act, disenfranchise felons from voting.[1] The question is whether the "except" clause did so.

---

[1] Indeed, the appellants have repeatedly stated that they seek to vindicate only their "right to vote in certain federal elections absent a clear and valid abridgement of that right by the State." Appellants' Reply Brief at 15. They explicitly acknowledge that a clearly stated bar on felon voting would vindicate this right, *id.* at 15–17, and that a state has the "authority" under the U.S. Constitution to disenfranchise felons. Oral Argument at 7:30–8:05 (January 6, 2010).

No. 08-60941
Consol w/ No. 09-60188

The appellants begin by observing that because there is little legislative history regarding § 241, and because it is unambiguous, its plain text is the only appropriate evidence of its meaning. Notwithstanding this point, they cite legislative history explaining that the 1972 amendment that added the clause was distinct from that amendment's other provision, which lowered the voting age to eighteen following ratification of the Twenty-Sixth Amendment. Therefore, the addition of the clause was not meant merely to keep the state in compliance with changes to the federal law governing voter qualifications. Moreover, the use of the word "except" in the presidential election clause creates an exception to the qualifications that precede it, including the bar on felon voting.

Appellants next assert that the limitation "otherwise a qualified elector" cannot refer back to the definition of "qualified elector" that precedes the presidential election clause, because doing so would render the limitation superfluous, contrary to our duty to "give effect, if possible, to every clause and word of a statute." *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 2 S. Ct. 391 (1883). Rather, the fact that "qualified elector" is used twice in § 241 indicates that there are two classes of qualified electors: one for state elections and one for presidential elections.

Finally, properly construing those two terms—"except" and "qualified elector"—reveals the plain meaning of the presidential election clause: that the bar on felon voting does not apply to presidential elections. Consequently, individuals who meet the qualifications of § 241 but for the bar on felon voting (i.e., sanity, age, citizenship, residency, and registration) are qualified to vote in presidential elections if they also satisfy any requirements established by Congress.

9

No. 08-60941
Consol w/ No. 09-60188

The appellants offer two more general arguments in support of their interpretation of § 241. The first is that the Mississippi Supreme Court has interpreted the felon bar narrowly, particularly when it has held that the bar does not apply to federal or out-of-state convictions.[2] The second is that the Supreme Court has repeatedly espoused the importance and fundamental nature of the right to vote. *See, e.g.*, *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 535 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."); *but see Richardson v. Ramirez*, 418 U.S. 24, 55, 94 S. Ct. 2655, 2671 (1974) (holding that the Constitution affirmatively sanctions the disenfranchisement of felons).

We need not consider these supporting arguments, however, because the text of § 241 is perfectly clear and perfectly contrary to the construction urged by the appellants. The word "except," as used in the presidential election clause does indeed create an exception. The general rule is that any individual who satisfies the qualifications listed in § 241, and only those qualifications, is a "qualified elector." For presidential elections, however, a voter must "meet[] the requirements established by Congress" *and* be "otherwise a qualified elector." The term "qualified elector," as used at this point, must bear the same definition that it is given in the text that immediately precedes the presidential election clause. If it referred only to requirements established by Congress, rather than those in state law, it would be superfluous. The term is simply not susceptible to the appellants' theory that it somehow incorporates *all* of the qualifications of state law *but for* the bar on felon voting.

---

[2] Specifically, the Mississippi Supreme Court has ruled that § 241 and the statutes that implement it do not disenfranchise those convicted of felonies under the laws of other states or under federal law. *Mississippi v. McDonald*, 145 So. 508, 511 (Miss. 1933); *Middleton v. Evers*, 515 So. 2d 940 (Miss. 1987).

No. 08-60941
Consol w/ No. 09-60188

Further, the appellants' assertion that consistently defining "qualified elector" renders superfluous the final element of the presidential election clause (". . . and is otherwise a qualified elector") defies logic. Were this text omitted, only "requirements established by Congress" would limit the franchise, and nothing in federal law prevents non-residents, infants, the insane, and indeed felons from voting in presidential elections, except as pursuant to state or local voting requirements. *See* 3 U.S.C. §§ 1–21 (presidential elections and vacancies); 42 U.S.C. § 1971(a) (stating that voting rights are defined by state and local law). The term "qualified elector," as previously defined, serves the plain and vital purpose of setting the breadth of the franchise in presidential elections. Far from being superfluous, the absence of this term would radically alter the effect of the presidential election clause.

Despite the appellants' protestations, there is no principled reason that the presidential election clause would grant only felons the right to vote in presidential elections while leaving the other qualifications of § 241 intact. In fact, for what conceivable reason would the State of Mississippi grant any group that it has forbidden from voting in state elections the explicit license to vote in presidential elections? And if, as the appellants' argument logically demands, the presidential election clause imports none of the qualifications that precede it, then the term "qualified elector" becomes a nullity. Appellants' parsing of Section 241 cannot stand against commonsense plain meaning.

### D. Abstention and Certification

As a fallback, the appellants suggest that *Pullman* abstention may be appropriate to resolve uncertainty regarding the meaning of § 241 and to give state courts an opportunity to interpret state law. In turn, the election officials, who argued below in favor of abstention, now propose, as an alternative to

No. 08-60941
Consol w/ No. 09-60188

abstention, certifying the question of the meaning of § 241 to the Mississippi Supreme Court.

*Pullman* abstention is justified "'when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.'" *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm., of State Bar of Tex.*, 283 F.3d 650, 652 (5th Cir. 2002) (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S. Ct 2321 (1984)). Regarding certification, this court has recognized that it is preferable to "the more cumbersome and . . . problematic abstention doctrine." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 668 (5th Cir. 2006) (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397, 108 S. Ct. 636, 644 (1988)). Neither approach can be justified here, because the text of § 241 is clear and the appellants' proffered interpretation of § 241 does not comport with its text. Accepting the state's longstanding, commonsense interpretation of the provision both avoids the constitutional issue and demonstrates respect for the state's interpretation of its own laws. Further, our decision does not preclude a state court from reaching a contrary holding in some future case. Today's result obviates any need to abstain or certify a question to the Mississippi Supreme Court.

## IV. CONCLUSION

For the reasons discussed above, the district court's dismissal of the appellants' claims is **AFFIRMED.**