# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

─────────

No. 18-60224

─────────

United States Court of Appeals
Fifth Circuit

**FILED**
February 27, 2019

Lyle W. Cayce
Clerk

ONEBEACON AMERICA INSURANCE COMPANY,

> Plaintiff - Appellee

v.

DOROTHY L. BARNETT, Individually, and as Wrongful Death Beneficiary of Howard Barnett, Deceased, and on Behalf of all Wrongful Death Beneficiaries of Howard Barnett, Deceased,

> Defendant - Appellant

─────────────────────────────────

DOROTHY L. BARNETT, individually, and as wrongful death beneficiary of Howard Barnett, deceased, and on behalf of all wrongful death beneficiaries of Howard Barnett, deceased,

> Plaintiff - Appellant

v.

MISSISSIPPI VALLEY SILICA COMPANY,

> Defendant

ONEBEACON AMERICA INSURANCE COMPANY, formerly known as Commercial Union Insurance Company and OneBeacon America Insurance Company, formerly known as Commercial Union Insurance Company as successor in interest to Columbia Casualty Company,

> Garnishee – Appellee

No. 18-60224

---

Appeal from the United States District Court
for the Southern District of Mississippi,
USDC No. 3:14-CV-41
USDC No. 3:14-CV-125

---

Before SMITH, BARKSDALE, and HO, Circuit Judges.

PER CURIAM: [*]

Dorothy L. Barnett, individually, and as wrongful death beneficiary of Howard Barnett, deceased, and on behalf of all wrongful death beneficiaries of Howard Barnett, deceased (Barnett), challenges the summary judgment awarded OneBeacon American Insurance Company, asserting: collateral estoppel does not bar her claim; and, genuine disputes of material fact exist regarding coverage under OneBeacon's insurance policies. VACATED and REMANDED.

I.

In 2011, Barnett filed a wrongful-death action in Mississippi state court against multiple defendants, including Mississippi Valley Silica Company (MVSC), alleging her husband contracted and died of silicosis—a lung disease caused by inhaling silica dust—while he was employed from 1957-88 by Mississippi Steel & Iron in Jackson, Mississippi. In 2012, a jury found in favor of Barnett, and against MVSC and two other defendants on her negligent-failure-to-warn claim, and awarded her $1,095,000 in compensatory and punitive damages.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 18-60224

MVSC, however, had ceased operating in 1978, and took bankruptcy in 1998; functionally, MVSC exists only through its insurance carriers. MVSC carried different insurance policies with different companies throughout its operating period, and, in addition to OneBeacon, Barnett has sought to collect her judgment against six other previous insurers for MVSC. (Those six other insurers are not parties to this action).

Columbia Casualty Company, now OneBeacon, admits it issued insurance policies to MVSC from 1958-67. Only one of those policies, however, has been located (for 1962-63); the others are lost.

OneBeacon filed a petition for declaratory judgment in Louisiana state court in August 2013 *against MVSC*, seeking a declaration that its policies issued to MVSC do not provide coverage for Barnett's Mississippi-state-court judgment. (The Louisiana state court had personal jurisdiction because MVSC was incorporated in Louisiana; therefore OneBeacon filed the action there.) OneBeacon insists the Louisiana court thoroughly "reviewed the law and the evidence", but Barnett contends the proceeding was functionally a default judgment and MVSC was never represented.

In that regard, the record from the Louisiana proceeding shows OneBeacon requested the court verify no answer was filed by MVSC, and a preliminary default was entered in mid-September 2013. OneBeacon's attorney moved for declaratory judgment, and offered into evidence, *inter alia*, the affidavits of Fitzgerald (the OneBeacon account manager handling Barnett's claim) and Simmonds (an underwriter for one of OneBeacon's predecessor companies, who had knowledge of the types of policies issued during the relevant time period)—the evidence in the summary-judgment record at hand. OneBeacon then briefly explained its position: MVSC did not purchase products-hazard coverage, as discussed *infra*.

3

No. 18-60224

The Louisiana court ruled from the bench in favor of OneBeacon, and granted the declaratory judgment. Barnett insists she was never provided any notice for, nor joined in, the Louisiana declaratory action by OneBeacon against MVSC.

In district court in January 2014, OneBeacon filed against Barnett the complaint for declaratory judgment in this action, seeking "enforc[ement] [of] the Louisiana state court judgment ruling that the policies issued by OneBeacon to [MVSC] do not provide coverage for the claims asserted by Barnett . . .". Later that month, Barnett filed in Mississippi state court a writ of garnishment against OneBeacon, which it removed to district court, and consolidated with its pending declaratory action.

OneBeacon moved for summary judgment, seeking a declaration of its liability and a dismissal of Barnett's garnishment claim. The district court granted summary judgment in favor of OneBeacon, concluding: Barnett was collaterally estopped by the Louisiana state court judgment; but, even on the merits, OneBeacon's policies for MVSC did not provide coverage for her Mississippi-state-court judgment.

## II.

Barnett challenges the district court's *sua sponte* application of collateral estoppel, which was based on the Louisiana state-court judgment in favor of OneBeacon against MVSC. In the district court's, in the alternative, granting summary judgment for OneBeacon on the merits regarding coverage *vel non*, the court stated it "finds itself in lockstep with the Louisiana state court, and . . . the policies issued by OneBeacon to [MVSC] do not provide coverage for the judgment rendered in favor of Barnett against [MVSC] by the Mississippi state court". Barnett contends summary judgment on that basis is improper, asserting: there are genuine disputes of material fact regarding OneBeacon's

4

No. 18-60224

*lost policies*; and, as a matter of law, the language of the above-referenced *1962-63 policy* is ambiguous.

A summary judgment is reviewed *de novo*, "applying the same criteria" employed by the district court. *E.g.*, *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citations omitted). All reasonable inferences must be drawn in favor of the nonmovant, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence". *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citation omitted).

Summary judgment is appropriate where "there is no genuine dispute [of] material fact", and "movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law", thereby "preclud[ing] the entry of summary judgment". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

For the reasons that follow, this action is remanded for trial, but with our panel's retaining jurisdiction. As the parties conceded at oral argument, no jury demand was made; therefore, this matter is to be tried by the court (bench trial).

A.

This court reviews *de novo*, as a question of law, both the preclusive effect of a prior judgment, *Test Masters Educ. Serv., Inc., v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), and the application of collateral estoppel, *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997).

Although, as a general rule, collateral estoppel must be pleaded as an affirmative defense, the district court raised collateral estoppel *sua sponte*.

Our court has recognized two instances in which such a *sua sponte* ruling is permissible:  "both actions were brought in courts of the same district", *Trammell Crow Residential Co. v. Am. Prot. Ins. Co.*, 574 F. App'x 513, 522 (5th Cir. 2014) (citations omitted); or, "'all of the relevant facts are contained in the record and . . . uncontroverted'", *Mowbray v. Cameron Cty.*, 274 F.3d 269, 281 (5th Cir. 2001) (quoting *Am. Furniture Co., Inc. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. Unit A 1981)).  Because the Louisiana state-court proceeding and the action at hand were obviously not "brought . . . in . . . the same district", *Trammel*, 574 F. App'x at 522, and because, as explained *infra*, relevant facts contained in the record are far from "uncontroverted", *Mowbray*, 274 F.3d at 281, the district court erred in *sua sponte* applying collateral estoppel.

In addition, both parties agree on appeal that collateral estoppel does not bar Barnett's claim.  In that regard, we also conclude on the merits of collateral estoppel *vel non* that its application would be improper under both Mississippi and Louisiana law.  We also review the district court's applying Mississippi collateral-estoppel law to a Louisiana-state-court judgment, in contravention of the Supreme Court's decision in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461 (1982).

As noted, the district court applied Mississippi collateral-estoppel rules, although Barnett contends Louisiana law applies to that issue.  Although ultimately we conclude collateral estoppel would be inapplicable under either State's law, the choice of *Mississippi* law in determining the preclusive effect of a *Louisiana*-state-court judgment was arguably in error.  "Rather, [28 U.S.C. § 1738 (State and territorial statutes and judicial proceedings; full faith and credit)] . . . commands a federal court to accept the rules chosen by the State *from which* the judgment is taken." *Kremer*, 456 U.S. at 482 (emphasis added)

(citations omitted); *see also Cox v. Nueces Cty., Tex.*, 839 F.3d 418, 420–21 (5th Cir. 2016); *Thompson v. Dall. City Att'y's Office*, 913 F.3d 464, 468 (5th Cir. 2019).

Moreover, we are satisfied the collateral-estoppel holding under Mississippi law constitutes error. In Mississippi, "[c]ollateral estoppel applies where three elements are present: '(1) the issue involved in the second suit was identical to the one involved in the previous suit; (2) the issue was actually litigated in the prior action; and, (3) the resolution of the issue was necessary to the prior judgment'". *Evans v. Sharpley*, 607 So. 2d 1210, 1213 (Miss. 1992) (quoting *In the Interest of K.M.G.*, 500 So. 2d 994, 997 (Miss. 1987)). The district court grounded its holding in the erroneous conclusion that Barnett was "in privity" with MVSC, a party in the Louisiana declaratory-action.

As noted, Barnett was not a party to the Louisiana-state-court action by OneBeacon against MVSC. Unlike *American Furniture*, where the court also *sua sponte* raised collateral estoppel based on a prior Louisiana state-court judgment, American Furniture *was a party* to the prior state-court litigation, and directly litigated the relevant issues; therefore, "[i]t may not later pursue its position in the federal court diversity suit . . .". *Am. Furniture*, 721 F.2d at 482. Because Barnett was not a party to the Louisiana state-court action, she is not bound by the prior judgment, nor does it preclude her bringing this action. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in . . . jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (internal quotation marks omitted) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940))); 18A Wright & Miller, Federal Practice & Procedure § 4449 & n.22 (3d ed. 2017).

No. 18-60224

And, as also noted, Barnett was not "in privity" with one of the original parties under Mississippi law. She was not within the "chain of sale" of MVSC's purchase of insurance, *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1339 (Miss. 1997), was not connected by a prior attorney-client relationship, *Claiborne v. Ocwen Loan Servicing, LLC*, 194 So. 3d 877, 880 (Miss. Ct. App. 2015), and did not "stand in mutual or successive relationship to the same [r]ights of property", *Clement v. R.L. Burns Corp.*, 373 So. 2d 790, 794 (Miss. 1979) (internal quotation marks and citation omitted).

Similarly, Barnett did not "control" the action by OneBeacon against MVSC, and it is extremely unlikely—to say the least—her "interests were represented adequately by a party in the original suit": MVSC did not even appear. *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (citations omitted); *see also Montana v. United States*, 440 U.S. 147, 164 n.11 (1979). As such, we agree with the parties that Mississippi collateral estoppel does not bar Barnett's claim.

Finally, and in accordance with the Court's decision in *Kremer*, we further conclude Barnett's claim is not precluded under Louisiana law. *See Kremer*, 456 U.S. at 482. In Louisiana, a party is collaterally estopped if "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to [the] judgment". La. Stat. Ann. § 13:4231(3) (1991). Barnett does not have an "identity" with one of the original parties under Louisiana law, because "a privy is defined as 'one who . . . has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase or assignment'". *Alpine Meadows, L.C. v. Winkler*, 154 So. 3d 747, 757–58 (La. Ct. App. 2014) (quoting *Five N Co., L.L.C. v. Stewart*, 850 So. 2d 51, 61 (La. Ct.

8

No. 18-60224

App. 2003)), *writ denied*, 169 So. 3d 357 (La. 2015).  Barnett falls within none of those four categories; accordingly, her claim is also not barred by Louisiana collateral-estoppel rules.

B.

As noted, the district court, in the alternative, granted summary judgment for OneBeacon on the merits of coverage, concluding MVSC did not purchase products-hazard coverage and, therefore, Barnett's Mississippi-state-court tort judgment was not covered under the policies.  Because genuine disputes of material fact and issues of law exist regarding coverage, the summary judgment on the merits is vacated and this matter is remanded to district court for the above-described bench trial.

1.

The district court did not evaluate the weight of the lost policies, instead focusing solely on the weight and relevance of the 1962-63 "rediscovered" policy.  In instances where the district court did not explicitly address an issue on summary judgment in the first instance, our court has found it "advisable to vacate the district court's grant of summary judgment with regard to the issue and remand it for further consideration . . . [with] no opinion on the merits of the issue".  *Auclair v. Sher*, 63 F.3d 407, 410 (5th Cir. 1995) (footnote omitted); *accord Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 561 (5th Cir. 2018) (remanding for consideration of issue not addressed by district court).

The district court's sole treatment of the missing policies is in its discussing Simmonds' affidavit, in which he stated he had "personal knowledge of . . . the types of policies and their terms in existence during the period 1957 to 1987".  But, Simmonds' statement does not directly address the absence of the other policies and how to determine their terms and conditions of coverage.

9

The parties also dispute whether "products-hazard" coverage was purchased.  According to the 1962-63 policy, an injury falls within the "products-hazard" if, after goods or products are manufactured by the named insured, the "accident occurs after possession of such goods or products has been relinquished to others by the named insured", and "the accident occurs away from premises . . . controlled by the named insured".

OneBeacon asserts such coverage was required to be purchased separately; but, Barnett contends products-hazard coverage is part of the general-liability policy unless expressly excluded.  The burden of proof depends on which construction is correct.  Under both Louisiana and Mississippi law, "the existence . . . of a contract is a question of fact" to be decided by the finder of fact.  *Townsend v. Urie*, 800 So. 2d 11, 15 (La. Ct. App.) (citation omitted), *writ denied*, 797 So. 2d 674 (La. 2001); *accord Hunt v. Coker*, 741 So. 2d 1011, 1014 (Miss. Ct. App. 1999).  An insurance policy's being simply a contract, the question whether MVSC purchased a separate form of products-hazard exclusion would most closely resemble the factual determination for whether a contract exists.  More generally, a genuine dispute of material fact exists for whether products-hazard was required to be purchased separately or operated as an exclusion to coverage.

In Fitzgerald's affidavit, he states MVSC "agreed during litigation that it did not purchase [products-hazard] coverage from OneBeacon".  Because OneBeacon asserts it is Barnett's burden to prove coverage, it contends this statement all but defeats her claim.  Barnett, by contrast, notes Fitzgerald's statement is based solely on a joint stipulation in *Scarborough v. Northern Assurance Company of America*, 718 F.2d 130 (5th Cir. 1983) (stipulation of facts regarding the terms of a policy issued to MVSC by OneBeacon, before the 1962-63 policy was discovered), not on any first-hand knowledge of the lost

policies; and, more to the point, that stipulation states "the policies of insurance issued by Insurers to MVSC contained a products *exclusion*", potentially affecting the burden of proof.  (emphasis added).

Finally, the parties dispute whether Barnett's negligent-failure-to-warn claim would qualify for coverage under the policy language.  The parties also apparently dispute whether negligent-failure-to-warn is a products-liability injury, and therefore falls within the products-hazard, depending on which State's products-liability law would apply.

In short, there are genuine disputes of material fact and issues of law regarding the lost policies, and the operation of products-hazard as either separate coverage or an exclusion, that arguably affect these mixed questions of law and fact.  Without expressing an opinion on coverage under the missing policies, the burden of proof, the nature of "products-hazard coverage" or whether Barnett's negligent-failure-to-warn claim qualifies, we remand for evaluation by the district court of these, and other, issues at the bench trial.

2.

In addition, the parties dispute the interpretation of the "rediscovered" 1962-63 policy language.  Under both Louisiana and Mississippi law, determining "[w]hether or not ambiguity exists in an insurance policy is . . . a question of law".  *Smith v. Am. Family Life Assurance Co. of Columbus*, 584 F.3d 212, 215 (5th Cir. 2009) (applying Louisiana law) (citation omitted); *Barden Miss. Gaming LLC d/b/a Fitzgerald's Casino v. Great N. Ins.*, 576 F.3d 235, 238 (5th Cir. 2009) (applying Mississippi law).

Barnett contends her Mississippi-state-court tort judgment falls within the 1962-63's policy's coverage under Coverage B "Bodily Injury Liability— Except Automobile", which shows a premium of $127.42, and a limit of liability of $200,000 for "aggregate products".  Paragraph 6 of the policy "states 'the

limits of bodily injury liability . . . stated in the declaration as "aggregate products" are respectively the total limits of the company's liability for all damages arising out of the products hazard'".  Barnett notes Item 3 on the declarations page states "insurance afforded is only with respect to such . . . of the following coverages as are indicated by a specific premium charge"; and, because the "aggregate products" shows an advance premium of $127.42, it is reasonable it qualifies for coverage under the language of Item 3, (particularly since, under Coverage D on the declarations page, aggregate products for "Property Damage Liability-Except Automobile" shows "Nil").

OneBeacon disagrees, pointing to the consolidated liability schedule which shows apparently nothing was paid for "aggregate products" as the advance premiums under Coverage B total $127.42, showing nothing for "aggregate products", which states only "Nil-See Endorsement".  When asked at oral argument to explain the incongruity between the two pages, OneBeacon admitted it did not know because "the record doesn't indicate what that was".

At best, it is unclear why the policy language shows a paid-premium for "aggregate products" on the declarations page, but apparently not on the consolidated-liability schedule, creating an ambiguity.  None of OneBeacon's summary-judgment evidence addresses Barnett's position regarding the $200,000 limit of liability for "aggregate products", or the meaning of Paragraph 6 and its inclusion of "the products hazard".  Therefore, OneBeacon has not met its burden to show, as a matter of law, the 1962-63 insurance policy unambiguously precludes coverage.

Although, at the outset, we noted interpretation of an insurance policy is a legal question, we go no further than stating the 1962-63 policy contains ambiguities; nor do we express any opinion as to the potential outcome stemming from those ambiguities.  Under both Louisiana and Mississippi law,

once a policy is determined to be ambiguous, or further fact-finding is necessary to determine the effect of an ambiguity, a fact-finder must address those questions. *Westerfield v. LaFleur*, 493 So. 2d 600, 605 (La. 1986) ("[S]ummary judgment may not be rendered declaring lack of coverage unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts . . ., under which coverage could be afforded." (citation omitted)); *Luquette v. Allstate Ins. (Indem.) Co.*, 174 So. 3d 736, 745 (La. Ct. App.), *writ denied*, 180 So. 3d 300 (La. 2015); *Clark v. State Farm Mut. Auto. Ins.*, 725 So. 2d 779, 781 (Miss. 1998) ("The initial question of whether the contract is ambiguous is a matter of law, but the subsequent interpretation of the ambiguous contract presents a finding of fact." (cleaned up and citations omitted)); *see also W. Line Consol. Sch. Dist. v. Cont'l Cas. Co.*, 632 F. Supp. 295, 301 (N.D. Miss. 1986). In the light of these ambiguities our court remands this matter for evaluation at the bench trial of these, and other, issues including choice of law and the interpretation of the ambiguous language.

## C.

As noted, even though we remand this matter for trial, our panel retains jurisdiction over this appeal. *See, e.g., United States v. Arellano-Banuelos*, 912 F.3d 862, 869 (5th Cir. 2019); *Castillo v. City of Weslaco*, 369 F.3d 504, 507 (5th Cir. 2004); *Royal Bank of Can. v. Trentham Corp.*, 665 F.2d 515, 519 (5th Cir. Unit A 1981). In the interest of expediency, given this litigation began in state court nearly eight years ago, and with this action's being filed in mid-January 2014, the bench trial must be completed within 60 days from the date of this opinion. *See Royal Bank of Can.*, 665 F.2d at 519. The parties conceded at oral argument that discovery is complete; it shall not be reopened on remand.

The district court's findings of fact and conclusions of law, including entry of judgment, must be filed within 30 days from the last day of trial. *See*

No. 18-60224

*id.*; *see also* Fed. R. Civ. P. 52(a)(1); 58.  The findings and conclusions should include a conflict-of-laws analysis, as appropriate, given the lingering dispute between the parties over whether Louisiana or Mississippi law governs.

Any post-trial motions must be filed within 28 days from judgment.  *See* Fed. R. Civ. P. 52(b); 59(b), (d), (e).  All responses must be filed within 14 days; and, an order ruling on a motion must be entered within 30 days of the motion's filing.

## III.

For the foregoing reasons, the judgment is VACATED and this matter REMANDED.  We retain jurisdiction over this appeal.  Therefore, and in accordance with the above-imposed schedule's ending with the entry of post-trial rulings:  after the trial transcript, district court's findings, conclusions, and final judgment, and post-trial rulings are entered in district court, the district court clerk shall return this matter to this court for disposition by this panel.

Upon receipt, a briefing schedule will be set.